IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cv-00838-BL-JTA |
| | ) | |
| SOUTHERN HEALTH PARTNERS, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**[1]

Pending before the court are Defendants Thomas Hugghins and Sheriff Blake Turman's Motion to Dismiss (doc. 32) and Defendant Southern Health Partners, Inc.'s ("SHP") Motion to Dismiss (doc. 34). Plaintiff Betty Wright has filed a Consolidated Response to the Defendants' Motions to Dismiss (doc. 38), and the Defendants have filed replies to the Plaintiff's Consolidated Response (docs. 39, 40). For the reasons stated in this order, the court finds that both Motions to Dismiss are due to be granted.

## I. Factual Allegations[2]

The allegations in the Amended Complaint, taken in the light most favorable to the Plaintiff, establish the following facts.

[1] The above-styled case was reassigned to the undersigned on November 12, 2025.

[2] At the motion-to-dismiss stage, the court must accept the complaint's well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

The Plaintiff is a 60 year old African American female who worked as a nurse for Southern Health Partners at the Covington County Jail; the Plaintiff "practices Pentecostal-Holiness and wears dresses or skirts in accordance with her religious tradition, including when working." (Doc. 24 at 3, 5). One of the Plaintiff's job duties was to distribute medication to inmates at the jail by either going to the individual inmate's cell or by the inmates being brought to her. (Doc. 24 at 5). The Plaintiff asserts that "[g]oing to the inmates' cells required [the Plaintiff] to travel up a flight of stairs, which due to her attire she preferred not to do." (Doc. 24 at 5). The Plaintiff further asserts that she "did travel up and down the stairs without complaint when necessary" and "never told anybody that she … would not travel up and down the stairs if necessary." (Doc. 24 at 5-6). Moreover, the Plaintiff "had generally been allowed to perform her duties without climbing up the stairs in dresses and skirts, and [the Plaintiff] had always been clear that in the event her duties could only be properly performed by traveling up the stairs, she would be willing to do so." (Doc. 24 at 6).

The Plaintiff alleges that Defendant Hugghins "notified Defendant [SHP] that unless they fired [the Plaintiff], [Defendant Hugghins] would ensure that [SHP] lost their contract to provide healthcare at the Covington County Jail." (Doc. 24 at 6). Subsequently, the Plaintiff alleges that, on or about May 16, 2024, she was informed by Susan Christianson[3], a representative of SHP, that she was being terminated for "not doing her

[3] The court notes that the EEOC Charge contains allegations pertaining to "Susan Christensen." (*See* Doc. 34-1 at 2). However, the Amended Complaint identifies this individual as "Susan Christianson." (*See* Doc. 24 at 6). As such, the court will adopt the Amended Complaint's spelling of this individual's name as "Susan Christianson."

job"; the Plaintiff was further informed that she was being terminated because she would not travel up the stairs to give medications to the inmates. (Doc. 24 at 6).

On September 23, 2024, the Plaintiff filed a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"); the Plaintiff received a right-to-sue letter dated September 25, 2024. (Doc. 24 at 2). The Charge[4] identifies discrimination based on Race and Religion, states the discrimination took place on May 16, 2024, and that the Plaintiff believed "that [her] employment was terminated due to [her] race (Black) and because of [her] religious beliefs (Holiness)." (Doc. 34-1 at 2). The Charge further states that "Christianson alleged [that the Plaintiff] received several complaints from officers who reported [that the Plaintiff] was difficult to work with and that [the Plaintiff] refused to go upstairs and give inmates their medication." (Doc. 34-1 at 2). Notably, the Charge does not mention sex/gender discrimination, the Plaintiff's attire, or any requested accommodation. (*See* Doc. 34-1 at 2-4).

The Plaintiff asserts that her termination was unlawful and occurred as a result of her employer failing to accommodate her religious beliefs and, as a result, the Plaintiff asserts that she has suffered significant economic harm, "including but not limited to lost wages, loss of benefits, emotional distress, and damage to her professional reputation." (Doc. 24 at 7). The Plaintiff further alleges that her termination "caused her to lose valuable

---

[4] When considering a Federal Rule of Civil Procedure 12(b)(6) motion, a "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, the court finds that the EEOC Charge is both central to the Plaintiff's Title VII claims, and its authenticity is undisputed.

paid time off (PTO) hours, totaling 122 hours ($2,928), and caused significant damage to her career prospects in the healthcare industry." (Doc. 24 at 7). Moreover, the Plaintiff asserts that Defendant SHP "unreasonably and unjustifiably contested [the Plaintiff's] unemployment, leaving her unable to receive the benefits due to her." (Doc. 24 at 7).

## II. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief." *Sanders v. Zalesky*, No. 1:25-CV-71-WKW, 2026 WL 579503, at *1 (M.D. Ala. Mar. 2, 2026) (internal quotations and citation omitted). When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012).

To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted).

The allegations in the complaint should present a "plain statement possess[ing] enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (quotations omitted). "Mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680. A plaintiff must "allege[] enough facts to nudge his claim … across the line from conceivable to plausible." *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 570).

## III. Analysis

### A. Title VII Claims Against Southern Health Partners

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to … compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Further, an employer may not

make an employee's "religious practice, confirmed or otherwise, a factor in employment decisions." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015).

"Prior to filing a Title VII action, … a plaintiff first must file a charge of discrimination with the EEOC." *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). "[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC [charge]" and the "complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1279-80. Thus, the proper inquiry is whether the "complaint was like or related to, or grew out of, the allegations contained in [the] EEOC charge." *Id.* at 1280. Further, the "complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case," but, instead, the "complaint need only provide enough factual matter (taken as true) to suggest intentional" discrimination. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quotations and citations omitted).

**1. The Plaintiff's Sex-Based Claims were not Exhausted**

Counts I, III, IV, and VI allege discrimination or failure to accommodate because of the Plaintiff's gender or because of the Plaintiff's gender and religion. (Doc. 24 at 8, 10-14). SHP argues that "nowhere in [the Plaintiff's] EEOC charge does [the] Plaintiff reference such alleged disparate treatment of employees of different sexes or otherwise indicate in any way that she believed that she had experienced discrimination on the basis of her sex or gender." (Doc. 35 at 12). The Plaintiff asserts that these claims are

"inextricably intertwined" because her "religion required her as a woman to wear dresses and skirts." (Doc. 38 at 6).

The court finds that the Plaintiff's claims are not "like or related to … the allegations contained in her EEOC charge." *Gregory*, 355 F.3d at 1280. The Plaintiff's Charge contains no allegation that would reasonably lead the EEOC to investigate whether SHP treated the Plaintiff differently because she is a female. In *Duberry v. Postmaster General*, the Eleventh Circuit affirmed a district court's dismissal where the "documents ma[d]e clear that [the plaintiff] only raised" other claims "before the EEOC" and "[a]s a result, [the plaintiff] did not exhaust her administrative remedies regarding her gender … claim." 652 F. App'x 770, 772 (11th Cir. 2016).

SHP separately argues that the Plaintiff "has abandoned her gender discrimination claims and claims alleging failure to accommodate." (Doc. 40 at 7). The court notes that the Plaintiff failed to answer the count-specific sex and gender-accommodation arguments in SHP's opening brief. (*See* Docs. 35 at 8-18, 24-25; 38). As such, an alternative basis for dismissal of these claims exists due to the Plaintiff's "failure to brief and argue" these issues, which supports a "finding that the issue[s] ha[ve] been abandoned." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1326 (11th Cir. 2000).

Accordingly, the court finds that Counts I and IV of the Plaintiff's Amended Complaint are due to be dismissed with prejudice and Counts III and VI are due to be dismissed with prejudice to the extent that they assert sex discrimination.

**2. Religion-Based Claims**

Count II alleges that the Plaintiff was terminated "because her religion requires her as a woman to wear a skirt or a dress." (Doc. 24 at 9). Count V alleges that the Plaintiff "was not allowed to do her job while wearing a skirt or a dress despite having been previously accommodated." (Doc. 24 at 12). Counts III and VI make the same allegations as to both religion and sex. (Doc. 24 at 10, 13).

SHP argues that the Plaintiff's assertion that it was her preference not to climb stairs "is not a sincerely-held religious belief that conflicts with a work requirement, meaning that [the] Plaintiff cannot rely on such allegations to avoid dismissal of her religious discrimination claims." (Doc. 35 at 24). SHP further argues that the Amended Complaint contains no "paragraphs of a factual nature alleging that SHP had any dress code or other policies as to employees' attire while working at the Jail, particularly any policies forbidding employees like [the] Plaintiff from wearing skirts or dresses." (Doc. 35 at 20). Moreover, SHP argues that the Amended Complaint contains no factual allegation that the Plaintiff was "ever told *not* to wear skirts or dresses while working at the Jail or otherwise forbidden from doing so." (Doc. 35 at 22) (emphasis in original). However, as stated above, the Plaintiff's EEOC Charge states that she was terminated "because of [her] religious beliefs (Holiness)." (Doc. 34-1 at 2). Thus, the court finds that Count II of the Amended Complaint is within the reasonable scope of the Charge.

As stated above, the Amended Complaint alleges that the Plaintiff "wears dresses or skirts in accordance with her religious tradition, including when working." (Doc. 24 at 5). The Amended Complaint further alleges that traveling to the inmates' cells required walking up a flight of stairs, which "due to her attire [the Plaintiff] preferred not to do."

(Doc. 24 at 5). However, the Plaintiff asserts that she "did travel up and down the stairs without complaint when necessary" and "never told anybody that she … would not travel up and down the stairs if necessary." (Doc. 24 at 5-6). Moreover, the Plaintiff "had generally been allowed to perform her duties without climbing up the stairs in dresses and skirts." (Doc. 24 at 6).

Indeed, the Amended Complaint does not allege that SHP prohibited the Plaintiff from wearing a dress or skirt, required her to wear some other form of clothing, or required her to climb stairs while wearing attire in accordance with her religion. While the Amended Complaint does assert that there is "a policy forbidding those in [the] Plaintiff's job role from wearing a skirt or dress," it also asserts that the alleged policy is "facially neutral." (Doc. 24 at 9). Beyond that conclusory assertion, the Amended Complaint does not provide factual allegations for the alleged policy; it neither identifies the alleged policy nor does it allege who adopted or enforced it, how it applied to the Plaintiff, or how it related to the asserted stair requirement. Moreover, the Amended Complaint's assertion that the Plaintiff's termination resulted from her employer "failing to accommodate her religious beliefs" does not identify the religious accommodation allegedly requested or denied. (Doc. 24 at 6).

However, the Plaintiff's Consolidated Response to the Defendants' Motions to Dismiss describes a different policy than the original policy alleged in the Amended Complaint; the Response identifies a policy "that forbids persons wearing a skirt or dress from climbing up stairs." (Doc. 38 at 7). The Eleventh Circuit has noted that "[a] plaintiff may not amend her complaint through argument in a brief opposing" dispositive relief.

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). As such, the court does not treat the Plaintiff's Response's stair-policy theory as a factual allegation in the Amended Complaint.

The Eleventh Circuit has noted that

> [t]o establish a reasonable-accommodation claim of religious disparate treatment, a plaintiff must first set forth a prima facie case by showing that (1) h[er] sincere and bona fide religious belief conflicted with an employment requirement, and (2) h[er] employer took adverse employment action against h[er] because of h[er] inability to comply with the employment requirement or because of the employer's perceived need for h[er] reasonable accommodation.

*Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021). Further, "[a] reasonable accommodation" "eliminates the conflict between employment requirements and religious practices." *Id.* at 1276 (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986)). As stated above, the Plaintiff need not plead facts sufficient to make out a prima facie case. *See Surtain*, 789 F.3d at 1246 ("[a] complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case."). However, the complaint must plead facts that make the claim plausible, not merely "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Here, the court finds that the pleaded facts fail to identify an employment requirement that conflicted with the Plaintiff's religious reasons for wearing dresses or skirts. Nor do the pleaded facts identify an accommodation request, an accommodation SHP denied, or facts connecting the alleged termination for not using the stairs with the Plaintiff's religious practice. Count V and the religion-based portions of Counts III and VI repeat Count II and request no distinct relief. A claim based on the same alleged failure to

accommodate is "duplicative" and "does not require separate analysis." *Jean-Pierre v. Naples Cmty. Hosp., Inc.*, 817 F. App'x 822, 828 (11th Cir. 2020). As such, the court finds that Counts II and V, and the religion-based portions of Counts III and VI are due to be dismissed without prejudice. Count V and the religion-based portions of Counts III and VI are due to be dismissed as duplicative of Count II.

**B. Section 1983 Claims**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "'Only in rare circumstances can a private party be viewed as a "[S]tate actor" for section 1983 purposes.'" *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)). Moreover, the Eleventh Circuit has noted that, to hold that private parties are state actors, one of the following three conditions must be met:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test").

*Id.* (quoting *Nat'l Broad. Co. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026-27 (11th Cir. 1988)).

For an Equal Protection claim, "[p]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences' … [i]t instead involves a

decisionmaker's undertaking a course of action '"because of," not merely "in spite of," [the action's] adverse effects upon an identifiable group.'" *Iqbal*, 556 U.S. at 676-77 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Further, "'[i]t is well established … that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). Rather, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id*. Moreover, "'[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.'" *Id*. (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).

The court notes that Count VII of the Plaintiff's Amended Complaint alleges that the "Defendants discriminated against [the] Plaintiff in violation of her constitutional rights under the Equal Protection Clause of the Fourteenth Amendment by subjecting her to unequal treatment based on her gender." (Doc. 24 at 14). Count VIII makes the same allegation with respect to the Plaintiff's religion. (Doc. 24 at 15). Count IX makes the same allegation with respect to the Plaintiff's "gender and religion." (Doc. 24 at 17). Finally, Count X is titled "42 U.S.C. § 1983 Negligent Training and Supervision" and alleges that Defendant Turman "negligently failed in his duty to protect those interacting with his department from civil rights violations." (Doc. 24 at 19).

**1. Capacity**[5]

The Amended Complaint states that Defendant Hugghins is being "sued in his individual capacity." (Doc. 24 at 4). Moreover, Defendants Hugghins and Turman assert in their opening brief that they are appearing "in their individual capacities." (Doc. 33 at 1). As such, the court construes Counts VII, VIII, IX, and X as asserting claims for damages against Defendants Hugghins and Sheriff Turman in their individual capacities. To the extent that the Plaintiff intended to seek damages from Defendant Turman in his official capacity, those claims are due to be dismissed without prejudice for the reasons stated in footnote 4.

**2. No Plausible Equal Protection Claim**

The Plaintiff asserts that "Defendant Hugghins notified [SHP] that unless they fired [the Plaintiff], he would ensure that they lost their contract to provide healthcare at the Covington County Jail." (Doc. 24 at 6). However, the court notes that the Plaintiff does not allege that Defendant Hugghins made a sex or religion-based statement, treated a comparator more favorably, or threatened a loss of SHP's contract because of the Plaintiff's sex or religion. The assertion that the Defendants "would have granted a religious

[5] The court notes that, while the Amended Complaint is silent as to what capacity in which the Plaintiff is suing Defendant Turman, it calls Defendant Turman "the chief policymaker with respect to" the Covington County Jail. (Doc. 24 at 3). To the extent that the Plaintiff seeks damages from Defendant Turman in his official capacity, those claims are barred by Eleventh Amendment immunity. "[A]n Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1288 (11th Cir. 1998). Alabama sheriffs "are immune from a lawsuit for damages in their official capacities under the eleventh amendment to the United States Constitution." *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1523 (11th Cir. 1990). Moreover, "[s]overeign immunity is jurisdictional in nature" and "[d]ismissals for a lack of jurisdiction are not judgments on the merits and are to be entered without prejudice." *Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024).

accommodation if presented by a male employee" is nothing more than a hypothetical and conclusory statement. (Doc. 24 at 14). Further, the Plaintiff herself asserts that the dress policy is "facially neutral." (Doc. 24 at 15). As such, the court finds that the Plaintiff has failed to plausibly plead that Defendant Hugghins acted "because of" the Plaintiff's sex or religion. *See Iqbal*, 556 U.S. at 676.

Moreover, the Plaintiff asserts that SHP "contracted with Covington County Jail to provide medical and mental health care to inmates." (Doc. 24 at 3). The Plaintiff alleges that providing the inmates with healthcare was "outsourced" to SHP and that this "critical responsibility" is "generally the role of the governmental entity in charge of the jail." However, these allegations pertain to SHP's role in providing medical and mental health care to inmates. Thus, since the Plaintiff's claimed deprivation is the termination of her employment, the question becomes whether that particular decision is fairly attributable to the State. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (noting that "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."). Moreover, "private conduct is fairly attributable only when the [S]tate has had some affirmative role, albeit one of encouragement short of compulsion, *in the particular conduct underlying a claimant's civil rights grievance*." *Rayburn*, 241 F.3d at 1347 (quoting *NBC*, 860 F.2d at 1025 n.4) (emphasis in original).

Here, the court notes that the Plaintiff has failed to allege that the State directed SHP to terminate the Plaintiff, that the State compelled SHP's decision to terminate the Plaintiff,

or that the State participated in SHP's decision to terminate the Plaintiff. The Plaintiff's assertion that Defendant Hugghins threatened to end the contract with SHP may show pressure exerted by a jail official, but it does not, without more, allege that the State had an affirmative role in SHP's decision to terminate the Plaintiff. As such, the court finds that the Plaintiff's § 1983 claims against SHP fail.

### 3. Supervisory Claim Against Defendant Turman

The court notes that the Plaintiff does not allege that Defendant Turman participated in her termination. However, the Plaintiff asserts that "Defendant Turman turned a blind eye to [Defendant] Hugghins's misconduct, including the harassment and unequal treatment toward [the] Plaintiff." (Doc. 24 at 18). Moreover, the Plaintiff asserts that "Defendant Turman negligently failed in his duty to protect those interacting with his department from civil rights violations, in violation of 42 U.S.C. § 1983 and resulting in significant damages to [the] Plaintiff." (Doc. 24 at 19). However, negligence without more does not establish a constitutional deprivation. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (concluding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.") (emphasis in original).

Here, the allegations that Defendant Hugghins "had issues interacting with women in work-appropriate manners," "had a pattern of treating many women within the jail poorly," and allegedly sexually harassed multiple female guards and other jail staff do not plausibly show comparable, widespread constitutional violations that would have put Defendant Turman on notice of a risk that Defendant Hugghins may cause SHP to

terminate the Plaintiff based on sex or religion. (*See* Doc. 24 at 6, 18). The Eleventh Circuit has recognized that "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith v. DeKalb Cnty., Georgia*, 749 F.3d 1034, 1048 (11th Cir. 2014). Moreover, prior misconduct of a different nature does not put a supervisor on notice of an alleged later violation. *See Christmas v. Harris Cnty., Georgia*, 51 F.4th 1348, 1355-56 (11th Cir. 2022) (finding that two prior incidents "would [not] have put [the sheriff] on notice" of a later sexual assault). Thus, the court finds that these allegations made by the Plaintiff against Defendant Hugghins fail to plead the causal connection required by *Cottone*.

Accordingly, the court finds that Count VII, VIII, IX, and X are due to be dismissed with prejudice to the extent that they assert individual-capacity § 1983 claims against Defendants Turman and Hugghins. Alternatively, Defendants Turman and Hugghins are entitled to qualified immunity. In their opening brief, Defendants Turman and Hugghins assert that they "are accordingly entitled to qualified immunity unless [the] Plaintiff plausibly alleged that they each violated one or more of [the] Plaintiff's constitutional rights, and, further, that the specific rights were clearly established at the time." (Doc. 33 at 5). However, the court notes that the Plaintiff has failed to cite any authority that clearly established the alleged conduct as an Equal Protection violation at the time. As such, the court finds that the Plaintiff has failed to carry her burden "to show that qualified immunity should not apply." *Crocker v. Beatty*, 995 F.3d 1232, 1239-40 (11th Cir. 2021) (quotations omitted).

**C. Show-Cause Proceedings**

On June 20, 2025, the previously assigned District Judge ordered the Plaintiff's counsel to show cause why they should not "personally bear all of the defendants' costs resulting from plaintiff's counsel's delay of this litigation." (Doc. 22 at 2). The Show-Cause Order quoted 28 U.S.C. § 1927, which permits a court to require an attorney to pay "the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." (Doc. 22 at 3).

On June 30, 2025, counsel for the Plaintiff filed a response to the Show-Cause Order asserting that the missed deadlines resulted from "overlapping professional and personal obligations—not bad faith, recklessness, or dilatory intent." (Doc. 23 at 1). Counsel for Defendants Turman and Hugghins responded on July 7, 2025, motioning the court to allow them to file information under seal "[i]f this court finds that sanctions are appropriate." (Doc. 30 at 1). Further, counsel for SHP responded on July 7, 2025, and stated that they do "not affirmatively seek sanctions but defers to the court as to whether sanctions should be awarded, and recognizes its inherent discretion in connection with this matter." (Doc. 31 at 6).

The court notes that this case was reassigned to the undersigned District Judge on November 12, 2025. Section 1927 states that counsel who unreasonably and vexatiously multiplies proceedings "may be required" to pay the resulting excess costs. 28 U.S.C. § 1927. However, the Eleventh Circuit has held that, prior to imposing sanctions pursuant to § 1927, "the attorney's conduct [must be] so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

Accordingly, given the reassignment, the time elapsed since the alleged conduct, and the court's decision to resolve the pending motions on the merits, the court declines to impose sanctions in this case. Thus, since no award of fees will be determined by the court, Defendants Turman and Hugghins Motion for Leave to File Information Regarding Attorney's Fees Under Seal will be denied as moot.

**IV. Conclusion**

Accordingly, based on the foregoing, it is hereby **ORDERED** as follows:

1. Southern Health Partners, Inc's Motion to Dismiss (doc. 34) is **GRANTED**.
    a. Counts I and IV are **DISMISSED with prejudice**.
    b. Count II is **DISMISSED without prejudice**.
    c. Counts III and VI are **DISMISSED with prejudice** to the extent they assert sex discrimination and **DISMISSED without prejudice** to the extent they duplicate Count II.
    d. Count V is **DISMISSED without prejudice** as duplicative of Count II.
    e. Counts VII, VIII, and IX are **DISMISSED with prejudice** to the extent they assert § 1983 claims against Defendant Southern Health Partners, Inc.
2. Defendants Turman and Hugghins's Motion to Dismiss (doc. 32) is **GRANTED**.
    a. Counts VII, VIII, IX, and X are **DISMISSED with prejudice** to the extent they assert individual-capacity § 1983 claims.

b. To the extent that Counts VII, VIII, IX, and X seek damages from Defendant Turman in his official capacity, they are **DISMISSED without prejudice** for lack of subject-matter jurisdiction based on Eleventh Amendment immunity.

3. Defendants Turman and Hugghins's Motion for Leave to File Information Regarding Attorney's Fees Under Seal (doc. 30) is **DENIED as moot**.

A separate Final Judgment will be entered.

**DONE** and **ORDERED** on this the 15th day of September, 2026.

**BILL LEWIS**
UNITED STATES DISTRICT JUDGE